1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SANDRA LIFSCHITZ, on behalf of              CASE NO.  08CV1697-LAB (WMC)
     herself and all others similarly situated,
12                                               **ORDER GRANTING**
                                  Plaintiff,     **DEFENDANTS' MOTION TO**
13      vs.                                      **DISMISS, WITHOUT PREJUDICE**

14   NEXTWAVE WIRELESS INC., ALLEN
     SALMASI, GEORGE C. ALEX and
15   FRANK A.  CASSOU,

16                                 Defendants.

17

18          This is a typical securities class action: a company announces financial results that

19   cause the share price of its stock to plunge, investors lose a lot of money, and the investors

20   then sue the company and certain officers for making false statements, prior to the stock

21   plunge, about its financial condition and business prospects.  The Defendants here are

22   NextWave Wireless, which deals in mobile multimedia and wireless broadband products,

23   and three company executives: Allen Salmasi, George Alex, and Frank Cassou.  Salmasi

24   is NextWave's founder and chief executive officer, Alex is its chief financial officer, and

25   Cassou is its vice president and general counsel.  Plaintiffs are all persons who purchased

26   or otherwise acquired NextWave common stock between November 14, 2006 and August

27   7, 2008.  The legal bases of Plaintiffs' claims are sections 10(b) and 20(a) of the Securities

28   Exchange Act of 1934.

1   **I.      Procedural History**

2         This action was initiated on September 16, 2008.  On February 24, 2009, the Court

3   issued an order consolidating this case with *Benjamin v. NextWave*, 08–CV–1934, and

4   appointing the White Trust Group lead plaintiff.  The Court also approved the White Trust

5   Group's selection of Hulett Harper Stewart LLP as local counsel and the Law Offices of

6   Bernard Gross as lead counsel.  Defendants filed a motion to dismiss on June 29, 2009,

7   which was fully briefed and taken under submission by the Court on September 17, 2009.

8   **II.     Legal Standards**

9         Plaintiffs assert claims under sections 10(b) and 20(a) of the Securities Exchange Act,

10  but it is really section 10(b) that is the focus here.   "Section 20(a) extends liability for

11  violations of other provisions of the 1934 Act, including § 10(b), to certain so-called

12  'controlling persons.'" *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938 (9th Cir. 2009).

13  In other words, "liability under § 20(a) turns on a violation of § 10(b)." *Id.*

14        The basic elements of a section 10(b) claim are: (1) a material misrepresentation or

15  omission; (2) made with scienter; (3) in connection with the purchase or sale of a security;

16  (4) reliance by plaintiffs; (5) economic loss; and (6) a causal nexus between the

17  misrepresentation or omission and the loss. *Dura Pharms. v. Broudo*, 544 U.S. 336, 341-42

18  (2005).  As is always the case in considering a motion to dismiss, the Court must "accept the

19  plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs, and

20  will hold a dismissal inappropriate unless the plaintiffs' complaint fails to state a claim to relief

21  that is plausible on its face." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th

22  Cir. 2009) (internal quotations omitted).

23        In the securities context, however, plaintiffs must also satisfy the heightened pleading

24  requirements of the Private Securities Litigation Reform Act ("PSLRA").   Under the PSLRA,

25  a claim for securities fraud must raise a "strong inference" of scienter.   15 U.S.C. § 78u-

26  4(b)(2).  "[W]hen determining whether plaintiffs have shown a strong inference of scienter,

27  the court must consider *all* reasonable inferences to be drawn

28  //

1  from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX,*
2  *Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

3      The PSLRA also requires that a claim "specify each statement alleged to have been
4  misleading, the reason or reasons why the statement is misleading, and, if an allegation
5  regarding the statement or omission is made on information and belief, the complaint shall
6  state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).   "By
7  requiring specificity, § 78u-4(b)(1) prevents a plaintiff from skirting dismissal by filing a
8  complaint laden with vague allegations of deception unaccompanied by a particularized
9  explanation stating *why* the defendant's alleged statements or omissions are deceitful."
10 *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).
11 Indeed, the Court is concerned more with a complaint's precision than its volume or breadth.
12 *Id.* at 1055, 1070-1072 (dismissing a securities claim "despite its lengthy and far-reaching
13 allegations").

14 **III.   Discussion**

15     The Defendants argue that Plaintiffs' complaint fails to adequately plead falsity,
16 scienter, reliance, and loss causation, each an essential element of a claim under section
17 10(b) of the Securities Exchange Act.  But they also argue, as a preliminary matter, that the
18 complaint is "puzzle-pled," by which they mean "Plaintiff quotes extensively from public
19 disclosures throughout the putative class period, without specifying the ***particular***
20 statements within those disclosures that are purportedly false or misleading." (Mem. Supp.
21 Mot. Dismiss at 5.)  A puzzle-pled complaint, in simple terms, is one that, even it appears to
22 be rich in substance, nonetheless requires the reader to connect the dots linking the alleged
23 facts to the legal claims.   By calling Plaintiffs' complaint puzzle-pled, Defendants are
24 essentially accusing it of violating Rule 8 of the Federal Rules of Civil Procedure, which
25 requires that a complaint contain "a ***short and plain*** statement of the claim showing that the
26 pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).

27     "Short" and "plain" aren't the first words that come to the Court's mind upon a review
28 of the complaint filed by Plaintiffs in this case.  To start with, it is 64 pages long.  Almost

twenty-four of those pages contain the rather detailed allegations of confidential witnesses about what was happening behind the scenes at NextWave during the class period.  Another twenty-four pages purport to detail the false and misleading statements that ground liability under section 10(b), although they attempt to accomplish this largely with lengthy excerpts from NextWave press releases and financial reports.  This section begins with a Form 10-Q NextWave filed on November 14, 2006, and ends with an announcement on July 24, 2008 that NextWave sold some of its spectrum licenses.  And then, in a section titled "The Truth Is Revealed," Plaintiffs devote four pages, nearly three of which contain a lengthy excerpt from an August 7, 2008 NextWave press release, to showing that Defendants' alleged false and misleading statements were in fact false and misleading.

There is no doubt that Plaintiffs' complaint alleges, with decent particularity, a number of *statements* on the part of NextWave and certain individual defendants that Plaintiffs believe were misleading when made.  The pleading standards of the PSLRA are not met, however, by "[a] litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false." *Metzler*, 540 F.3d at 1070.  After thirty-four paragraphs (comprising twenty four pages) that detail the who, what, when, and where of the statements at issue, Plaintiffs quote the press release that caused the share price of NextWave stock to plunge and then assert "Defendants' statements in NextWave's SEC Forms 10-K and 10-Q and in its press releases quoted above in ¶¶ 39-56, 58-61, and 63-72 were false and misleading when made and failed to disclose material facts as follows, supported by information provided by the Confidential Witnesses as alleged in ¶¶ 7-10, 20-31." (Compl. at ¶ 75.)  This leaves entirely too much for Defendants and the Court to piece together, and it is inadequate under the PSLRA.

Paragraphs 39-56, 58-61, and 63-72 in fact detail hundreds of statements made by NextWave, many of which Plaintiffs can't possibly contend were false and misleading ("An RFIC is part of the front-end of a radio system that receives a radio frequency signal, converts it to a lower frequency and modifies it for further processing"), and many of which Plaintiff's probably don't contend were false and misleading  ("During the third quarter of

2007, NextWave Broadband announced the release of its NW1000 Series WiMAX chipset; the first generation in a family of WiMAX baseband and multi-band RFIC chipsets designed to provide wireless device and network equipment manufacturers with an advanced platform to develop next-generation WiMAX mobile terminal and infrastructure products"). (Compl. ¶¶ 42, 56.) Plaintiffs conclusory statement in their complaint that "Defendants statements . . .quoted above . . . were false and misleading when made" (Compl. at ¶ 75) clearly violates the PSLRA's requirement that a claim "specify each statement alleged to have been misleading." 15 U.S.C. § 78u-4(b)(1). The Court expects more, and Defendants deserve more, than verbatim recitations of lengthy passages from NextWave financial reports and press releases that do not single out the actual statements that are the bases of Plaintiffs' securities fraud claims.

Likewise, the PSLRA requires a claim for securities fraud to offer "the reason or reasons" why the statements at issue are misleading. 15 U.S.C. § 78u-4(b)(1). Plaintiffs' crack at this consists of a lengthy excerpt from an August 7, 2008 NextWave press release that, presumably, is intended to show that all previously quoted financial reports, press releases, and other statements contained false and misleading information. Plaintiffs also suggest that the information provided by twelve confidential witnesses explains why the statements at issue were misleading when made, but the Plaintiffs don't match any particular confidential witness statements with the allegedly misleading NextWave statements that are the basis of their claims. It is up to the Defendants (and the Court) to flip to the beginning of the complaint, read through the discussion of the confidential witnesses, and make this connection. The problem here is that Plaintiffs' factual allegations, no matter how voluminous, do not speak for themselves. Defendants needn't have their hands held while reading a complaint that accuses them of securities fraud, but they also can't be expected to forage through nearly fifty pages of factual allegations and piece together the bases of Plaintiffs' claims. Plaintiff's complaint "sets forth a considerable number of alleged false statements, [but] the . . . explanation of how and why the statements were false is decidedly vague." *Metzler*, 540 F.3d at 1070.

1    The Plaintiffs' response to all of this is that their complaint is actually "well-organized,"

2  which the Court finds surprising given that Plaintiffs acknowledge they must "specify each

3  statement alleged to have been misleading" and "the reason or reasons why the statement

4  is misleading." (Opp'n Br. at 9 (quoting 15 U.S.C. § 78u-4(b)(1).) "The Complaint," Plaintiffs

5  contend, "specifies each statement alleged to be misleading and identifies who made the

6  statements, what the statements were regarding, and when and where the false and

7  misleading statements were made." (Opp'n Br. at 10.) That's not really true. As the Court

8  has noted above, the complaint assembles nearly fifty pages of information from confidential

9  witnesses and a running log of public statements made by NextWave during a two-year

10 period, and then, *in a single paragraph*, labels all of the statements "false and misleading

11 when made" without highlighting specific statements and without setting them next to other

12 statements that show them to be false and misleading.[1] (Compl. ¶ 75.)

13    Plaintiffs' complaint in one that, to be intelligible, has to be pieced together by the

14 reader. Frankly, it reads as though Plaintiffs conducted an investigation into the conduct of

15 NextWave and simply transcribed all of their notes into a legal pleading, hoping they would

16 coalesce into a well-pleaded complaint. Not so.

17 **IV.    Conclusion**

18    Plaintiff's complaint is burly and anemic at the same time. It is burly in its page length

19 and factual content. It is anemic in its presentation and argument, and because it fails to

20 whittle its factual allegations into an intelligible claim for securities fraud. It does not clarify

21 which of the many NextWave statements that it cites were false and misleading when made

22 (and "All of them!" can't possibly be the answer), nor does it adequately explain *why* they

23 were misleading, other than with a three-page excerpt from a NextWave press release that

24

_____

25    [1] Defendants cite a case from the Central District of California holding, "For each

26 allegedly false or misleading statement, the Complaint should identify some facts suggesting
   that the statement is false or misleading . . . preferably in the same [paragraph] or a

27 paragraph following the statement." *Patel v. Parnes*, 253 F.R.D. 531, 554 (C.D. Cal. 2008)
   (internal quotations omitted). The Court doesn't want to tell Plaintiffs exactly how to structure

28 a complaint, but certainly the spirit of the *Patel* citation is instructive. At a minimum, the link
   between the allegedly false or misleading statements and the set of facts that suggest they
   were false or misleading should be obvious, and it can't hurt to put them close together.

1   Plaintiffs mistakenly believe speaks for itself, *as well as* the conclusory assertion that twenty

2   pages of information from confidential witnesses, laid out in the beginning of the complaint,

3   prove Defendants' statements were misleading.  Plaintiffs may as well have said "Just go

4   back and re-read the complaint a few times and then it'll all be clear."

5        The upside for Plaintiffs is that the Court would prefer to give them a chance to

6   amend before moving on to consider the other, more substantive grounds on which

7   Defendants argue Plaintiffs' claims should be dismissed: the failure to properly allege falsity,

8   scienter, reliance, and loss causation.  The Court agrees with the characterization of

9   Plaintiffs' complaint as a puzzle-pleading, and would rather operate from a complaint that's

10  not a puzzle in determining the more operative question whether Plaintiffs have actually

11  alleged the elements of a violation of section 10(b) of the Securities Exchange Act.

12       Plaintiffs are admonished to take the heightened pleading standards of the PSLRA

13  to their keyboard, along with Rule 8 of the Federal Rules of Civil Procedure, in amending

14  their complaint.  Rule 8, requiring a "short and plain" statement of Plaintiffs' claim, is intended

15  to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which

16  it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  But Plaintiffs should also keep the Court

17  in mind, and file a complaint that the Court — a stranger to NextWave and the industry it

18  does business in — needn't pore over to understand.  Plaintiff's amended complaint must

19  be filed within **21 calendar days** of the date this order is entered.

20       **IT IS SO ORDERED**.

21  DATED:  March 4, 2010

22                         *Larry A. Burns*

23                         **HONORABLE LARRY ALAN BURNS**
                          United States District Judge

24

25

26

27

28