WAYNE W. SMITH, SBN 54593
WSmith@gibsondunn.com
MERYL L. YOUNG, SBN 110156
MYoung@gibsondunn.com
JESSICA A. BOSCHEE, SBN 240575
JBoschee@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

Attorneys for Defendants
NEXTWAVE WIRELESS INC.,
ALLEN SALMASI, and GEORGE C. ALEX

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA LIFSCHITZ, On Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NEXTWAVE WIRELESS INC., ALLEN SALMASI, and GEORGE C. ALEX, <br> Defendants. | CASE NO. 08-CV-1697-LAB (WMc) <br> (consol. w/3:08-CV-1934 LAB (WMc)) <br><br> **CLASS ACTION** <br><br> **DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT** <br><br> [*Reply in Support of Request for Judicial Notice filed concurrently herewith*] |
| ALEX BENJAMIN, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NEXTWAVE WIRELESS INC., ALLEN SALMASI, and GEORGE C. ALEX, <br><br> Defendants. | **HEARING** <br> Date:  June 28, 2010 <br> Time:  11:15 a.m. <br> Place:  Courtroom 9 <br><br> [ORAL ARGUMENT REQUESTED] |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. PLAINTIFF FAILS TO ADEQUATELY PLEAD SCIENTER......................................... 1

    A.    Plaintiff's Allegations Of Scienter Lack The Specificity Required By The PSLRA ................................................................................................................... 1

    B.    Plaintiff's CW Allegations Do Not Support An Inference Of Scienter ....................... 2

        1.    The CWs Are Not Reliable And Lack Personal Knowledge ............................. 2

        2.    The CWs Do Not Provide Information Indicative Of Scienter......................... 4

    C.    Scienter Cannot Be Established Through The Core Operations Theory ..................... 5

    D.    Lack Of Insider Trading Weighs Heavily Against An Inference Of Scienter........................................................................................................................ 6

III. DEFENDANTS' FORWARD-LOOKING STATEMENTS ARE NOT ACTIONABLE ................................................................................................................... 7

    A.    The Statements Identified By Defendants As Forward-Looking Are Entitled To Protection Under The PSLRA Safe-Harbor................................................ 7

    B.    Defendants' Forward-Looking Statements Were Accompanied By Meaningful Cautionary Language........................................................................ 8

        1.    NextWave's Cautionary Language Was Meaningful ....................................... 9

        2.    Plaintiff Has Failed To Plead That Known Risks Existed That Were Not Disclosed By Defendants ................................................................ 10

        3.    Cautionary Language May Be Evaluated At The Pleading Stage ................... 11

IV. PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION ................................... 12

V. CONCLUSION ................................................................................................................... 12

Gibson, Dunn &
Crutcher LLP

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asher v. Baxter Int'l Inc.*,
 377 F.3d 727 (7th Cir. 2004) ............................................................................................... 10

*Berson v. Applied Signal Technology,*
 527 F.3d 982 (9th Cir. 2008) ................................................................................................. 3

*Cats v. Protection One, Inc.*,
 No. CV 99-3755, 2001 U.S. Dist. LEXIS 25726, at *35 (C.D. Cal. June 4, 2001) ........................ 5

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005) ............................................................................................................. 12

*In re Daou Sys. Corp. Secs. Litig.*,
 411 F.3d 1006 (9th Cir. 2005) ...................................................................................... 5, 6, 12

*In re DOT Hill Sys. Corp. Secs. Litig.*,
 No. 06-CV-228, 2009 U.S. Dist. LEXIS 22022, at *20-21 (S.D. Cal. Mar. 18, 2009) ................. 5

*In re Downey Secs. Litig.*,
 No. CV 08-3261, 2009 U.S. Dist. LEXIS 83443, at *35 (C.D. Cal. Aug. 21, 2009) ................. 5, 6

*In re Impac Mortgage Holdings, Inc. Sec. Litig.*,
 554 F. Supp. 2d 1083 (C.D. Cal. 2008) .................................................................................. 9

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
 527 F. Supp. 2d 1033 (N.D. Cal. 2007) .................................................................................. 8

*In re Remec Inc. Sec. Litig.*,
 No. 04-CV-1948, 2010 U.S. Dist. LEXIS 48415, at *146 (S.D. Cal. Apr. 21, 2010) ................. 6

*In re Stone & Webster, Inc. Sec. Litig.*,
 414 F.3d 187 (1st Cir. 2005) .................................................................................................. 8

*In re Vantive Corp. Secs. Litig.*,
 283 F.3d 1079 (9th Cir. 2002) ............................................................................................... 6

*In re Wet Seal, Inc. Secs. Litig.*,
 518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................................. 2, 11

*In re Williams Secs Litig.*,
 558 F.3d 1130 (10th Cir. 2009) ........................................................................................... 12

*In re Worlds of Wonder Sec. Litig.*,
 35 F.3d 1407 (9th Cir. 1994) ............................................................................................... 11

*Institutional Investors Group v. Avaya, Inc.*,
 564 F.3d 242 (3rd Cir. 2009) ................................................................................................. 9

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
 416 F.3d 940 (9th Cir. 2005) ............................................................................................... 11

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
 540 F.3d 1049 (9th Cir. 2008) ............................................................................................ 1, 4

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
 380 F.3d 1226 (9th Cir. 2004) ............................................................................................... 3

*Slayton v. Am. Express Co.*,
   2010 U.S. App. *LEXIS* 10072 (2nd Cir. May 18, 2010) .................................................................. 8

*South Ferry LP #2 v. Killinger*,
   No. C04-1599, 2009 U.S. Dist. LEXIS 91174, at *18 (W.D. Wash. Oct. 1, 2009) ........................ 6

*South Ferry LP v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ............................................................................................................ 6

*Teamsters Local 175 v. Clorox Co.*,
   353 F.3d 1125 (9th Cir. 2004) .......................................................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 325 (2007) .................................................................................................................. 7

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ..................................................................................................... 4, 6

**Statutes**

15 U.S.C. § 78u-4(b) .............................................................................................................................. 2

15 U.S.C. 78u-5(c)(1)(A)-(B) ................................................................................................................ 9

Gibson, Dunn &
Crutcher LLP

## I. INTRODUCTION

Contrary to Plaintiff's assertion in its Opposition to Defendants' Motion to Dismiss (the "Opposition"),[1] Defendants do not contend that the decline in the global economy excuses deficiencies in NextWave's disclosures. Rather, the disclosures were not deficient. Throughout the putative class period, the Company accurately disclosed its plans and projections while specifically warning investors about potential risks that might prevent NextWave from meeting all of its goals. The subsequent occurrence of disclosed risks simply does not create a securities fraud claim.

In the SAC, Plaintiff once again improperly relies on protected forward-looking statements, fails to adequately plead falsity or loss causation, and fails to allege facts that would give rise to the requisite strong inference of scienter. Moreover, Plaintiff's reliance on CW allegations that are rife with speculation and hearsay does nothing to support such an inference. Because this is Plaintiff's second failed attempt to plead a claim for securities fraud, Defendants respectfully request that the Court dismiss the SAC with prejudice.

## II. PLAINTIFF FAILS TO ADEQUATELY PLEAD SCIENTER

### A. Plaintiff's Allegations Of Scienter Lack The Specificity Required By The PSLRA

Defendants do not concede that Plaintiff adequately addressed the puzzle pleading deficiencies noted by the Court in dismissing the prior Complaint. To the contrary, Plaintiff simply shuffled around various parts of the Complaint but failed to address most of its underlying flaws. Specifically, Plaintiff still has not pled with the requisite specificity facts that would give rise to an inference that Defendants knowingly or recklessly made false or misleading statements about NextWave's financial performance, the initial availability of second generation WiMax chipsets, or the Company's growth strategy.

In its March 5, 2010 Order dismissing Plaintiff's Complaint ("Order"), the Court admonished Plaintiff that "a litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false," is insufficient to state a claim for securities fraud under the PSLRA. (Order at 4) (citing *Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1070 (9th Cir. 2008)). Plaintiff failed to heed this mandate. The SAC includes 17 lengthy paragraphs

---

[1] Defendants have used the same abbreviations here that were used in the motion.

challenging NextWave statements on a range of different topics.[2]  (*See* SAC, ¶¶ 13, 16, 19, 22, 25-26, 29, 32, 35, 38-39, 42-43, 45, and 47-49).  Plaintiff lumps together 24 pages of allegations from 13 separate CWs as support for scienter regarding the statements challenged in 14 of these 17 paragraphs.[3]  (*See* SAC, ¶¶ 15, 21, 24, 31, 34, 41, 44, and 51).  However, Plaintiff fails to specify which of the alleged fact(s) in the 24 pages of CW allegations supposedly ties to which particular statement or topic in the cross-referenced paragraphs.[4]  As a result, the SAC should be dismissed with prejudice for again failing to meet the PSLRA's heightened pleading requirements.[5]  15 U.S.C. § 78u-4(b).

> **B.     Plaintiff's CW Allegations Do Not Support An Inference Of Scienter**
>
> **1.     The CWs Are Not Reliable And Lack Personal Knowledge**

Plaintiff has failed to establish adequate foundations for the CW statements.  While Plaintiff asserts that each CW's former position at NextWave is sufficient to establish such a foundation (*see* Opp. at 9), Plaintiff has failed to plead facts that suggest that each CW actually had responsibilities in relevant areas or had relevant knowledge.  *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1170-71 (C.D. Cal. 2007) ("The Court simply cannot infer that these job titles inherently conferred such expertise.").  Here, CWs 1, 3, 5-6, 8-9, and 11-12 are not alleged to have communicated with executive management at any time, making them unreliable sources regarding Defendants' alleged state of mind.  In addition, because Plaintiff does not identify work locations or supervisors for CWs 1,

---

[2]  For example, in SAC paragraph 19 the challenged statements cover numerous topics including, for example, the acquisition of GO Networks, the general development of a mobile WiMax solution, the organization of the Advanced Technology Group, and the manufacture of the NW1200 chip.

[3]  In the three instances where Plaintiff cross-references to less than 13 CWs (SAC, ¶¶ 18, 28, 37), these CWs still fail to support an inference of scienter for the reasons set forth *infra* § II (B).

[4]  Even more egregious, in several cases the CWs referenced by Plaintiff could not possibly support an inference of scienter for the referenced challenged statements.  For example, CW6 is not alleged to have even worked at NextWave until July 2007, and yet is cited as support for Plaintiff's claims regarding statements made in 2006 and early 2007.  (SAC, ¶¶ 13, 19, 29.)  Plaintiff also relies on CW1 and CW12 as support for statements made before their arrival at the Company.  (*Id.*, ¶ 13.)

[5]  In addition, despite the Court's admonition, the SAC continues to quote statements made by NextWave "which Plaintiffs can't possibly contend were false and misleading" or "probably don't contend were false and misleading."  (Order at 4-5.)  For example, Plaintiff alleges that the following statements were false and misleading: "To develop its semiconductor products, ATG has organized its engineering resources into several product development groups" (SAC, ¶ 19(d)); and "[a]t present, 653 full time employees and 238 contractor personnel are engaged in developing and marketing our mobile broadband and wireless multimedia products and technologies" (*Id.*, ¶ 29(a).)

5-6, and 8-12, it is not possible to determine whether these CWs even would have had access to the information that they purportedly provided to Plaintiff.

Furthermore, Plaintiff's reliance on *Berson v. Applied Signal Technology, Inc.* as support for its argument that the engineer CWs have relevant personal knowledge is misplaced.[6]  (*See* Opp. at 13) (citing 527 F.3d 982 (9th Cir. 2008)).  In *Berson*, the defendants argued that the plaintiffs had not alleged sufficient facts to show that the company ever received certain stop-work orders and that the plaintiffs' engineer CWs "weren't in a position to see the stop-work orders first-hand because they were 'engineers or technical editors' rather than managers."  527 F.3d at 985.  The court held that because a stop-work order had the "very obvious effect of putting numerous employees out of work," it was plausible that engineers could have deduced the issuance of a stop-work order.  *Id*.

In *Berson*, the stop-work orders had a "devastating effect on the corporation's revenue" with one stop-work order alone "halt[ing] between $10 and $15 million of work on the company's largest contract with one of its most important customers."  *Id*. at 988 n.5.  Here, unlike *Berson*, the CW engineers in question do not allege knowledge of a comparable "devastating" event.  Allegations about the costs associated with NextWave's Las Vegas test sites or the cancellation of the production of a number of PMP devices are not comparable to allegations about halting tens of millions of dollars of work on a company's largest contract.  (*See* Opp. at 10 (citing to allegations of CW3 and CW6)).  Despite Plaintiff's extensive quotation of various provisions from NextWave's disclosures, Plaintiff does not challenge even a single statement related to test site costs or PMP devices.  In addition, CW6 explicitly admits that he or she "did not know why the plan [to produce PMP devices] was cancelled." (SAC, ¶ 59).  Similarly, Plaintiff fails to plead any facts indicating that CW3 was aware of the significance of test site costs on the Company's revenues as a whole.  Thus, unlike the engineers in

---

[6]  Plaintiff's reliance on *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004), is similarly misplaced.  (*See* Opp. at 11-12).  In *Oracle*, the plaintiffs alleged that, since all sales information was in one database and the top executives admitted to monitoring the database, the company must have been aware that it was not going to meet its sales projections earlier, and that its statements to the contrary were therefore made with scienter.  Here, Plaintiff has made no allegations of such a central repository of information purportedly monitored by Defendants.

*Berson*, Plaintiff's CWs have no basis to allege how, if at all, this information impacted the Company overall or what Defendants' state of mind was regarding these events.

In addition, Plaintiff's complaint that Defendants somehow "cherry-pick facts" with respect to the reliability of CW3, CW6, and CW10 is unfounded. (Opp. at 10 n.4). Defendants have followed the Ninth Circuit's guidance, as set forth in *Zucco Partners*, for evaluating CW allegations; namely that "a hearsay statement . . . may indicate that a confidential witnesses' report ***is not sufficiently reliable, plausible, or coherent to warrant further consideration***." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 n.4 (9th Cir. 2009) (emphasis added). Here, as set forth at page 20 of the motion, the rampant hearsay and speculation contained in the allegations of CWs 3, 6, and 10, among others, render their allegations unreliable and unworthy of further consideration.

### 2. The CWs Do Not Provide Information Indicative Of Scienter

Plaintiff argues that its CW allegations are "indicative of scienter." (Opp. at 12-14). As set forth in detail in Defendants' motion, however, none of Plaintiff's CWs "convey information sufficient to support the strong inference of scienter that the PSLRA requires." *Metzler*, 540 F.3d at 1069 n.13; (Mot. at 18-24).

For example, Plaintiff erroneously argues that CW2's allegations regarding reductions in force and the delayed approval of a purchase order for a component of TD TV are indicative of scienter. (Opp. at 12-13). Both these events, however, are alleged to have occurred in July 2008, ***at least two months after*** the last statement challenged in the SAC. (*See* SAC, ¶ 49 (May 8, 2008 10-Q)). Similarly, Plaintiff relies on CW12's allegation that: "***In the middle of July 2008***, it was very clear to CW12 that the September 2008 milestone . . . would definitely be missed." (SAC, ¶ 65(c)). These allegations regarding events in July 2008 can hardly be indicative of Defendants' scienter with respect to statements made before the events occurred.

Similarly, Plaintiff relies on CW3's allegations that "it was widely known throughout the Company that NextWave's 'burn rate' was $1 million a day and 'money was getting tight.'" (Opp. at 12). As an initial matter, the SAC does not allege that any of the Company's disclosures regarding its cash flow were inaccurate, so CW3's allegations do not reveal any alleged fraud. In any event, CW3's allegations are too generalized and incomplete to be "indicative of scienter." CW3 was a test engineer

Gibson, Dunn &
Crutcher LLP

4

located in Nevada and is not alleged to have had any contact with the Individual Defendants or executive management in San Diego, or to have attended any meetings where the Company's financial performance was discussed.  CW3 worked at NextWave from 2004 to mid-2008, but does not say when he or she became aware of the alleged information about NextWave's "burn rate."  Thus, it is not clear that this information even relates to the putative class period.  Accordingly, CW3's allegations do not provide the requisite particularity to plead scienter.

While Plaintiff relies on CW4's allegations pertaining to IPWireless' "spaghetti code" and insufficient technical documents, these allegations do not provide adequate support for an inference of scienter.  It is implicit in CW4's allegations that this information was supposedly received only after NextWave's acquisition of IPWireless.  (*See* SAC, ¶ 57(c)-(d)).  CW4 fails to state how much time passed after the acquisition before he or she learned of the alleged deficiencies (i.e., whether this information was obtained prior to making challenged statements regarding IPWireless[7]), by whom this information was obtained, or how the information would have impacted NextWave's disclosures.  Without those details, CW4's allegations are not "indicative of scienter."

Finally, although Plaintiff relies extensively on CW7 and CW10 (*see* Opp. at 12-13), Defendants' motion sets forth detailed reasons why these CWs' allegations do not come close to supporting an inference of scienter.  (*See* Mot. at 18-24); *see also In re Daou Sys. Inc., Sec. Litig.*, 411 F.3d 1006, 1022 (9th Cir. 2005).

**C.    Scienter Cannot Be Established Through The Core Operations Theory**

While Plaintiff attempts to rely on the "core operations" theory to support its allegations of scienter (Opp. at 14-15), this theory simply is not applicable here.  Core operation allegations only

---

[7] Despite Plaintiff's arguments to the contrary, the SAC repeatedly attacks Defendants' business judgment, in particular its decisions to acquire IPWireless and GO Networks.  (*See* Opp. at 9 n.3). As explained in Defendants' motion (*see* Mot. at 14-15), mere disagreements about business strategies are not sufficient to establish scienter, nor does "the second-guessing of management decisions by confidential witnesses . . . provide a basis for securities fraud."  *In re Downey Sec. Litig.*, No. CV 08-3261, 2009 U.S. Dist. LEXIS 83443, at *35 (C.D. Cal. Aug. 21, 2009); *see also Cats v. Protection One, Inc.*, No. CV 99-3755, 2001 U.S. Dist. LEXIS 25726, at *35 (C.D. Cal. June 4, 2001) ("Plaintiffs must plead more than a mere disagreement with [a company's] business judgment."); *In re DOT Hill Sys. Corp. Sec. Litig.*, No. 06-CV-228, 2009 U.S. Dist. LEXIS 22022, at *20-21 (S.D. Cal. Mar. 18, 2009) (holding that pleading "a litany of employee complaints about how [a company] was managed" does not establish scienter).

create the requisite inference of scienter under two very limited exceptions: the "actual knowledge" and "absurdity" exceptions. *South Ferry LP #2 v. Killinger*, No. C04-1599, 2009 U.S. Dist. LEXIS 91174, at *18 (W.D. Wash. Oct. 1, 2009). Neither exception applies here.

Plaintiff's generic allegations that the Individual Defendants had "access to" non-public information, signed SEC filings, or attended unspecified meetings do not establish that any Defendant actually knew (or deliberately disregarded) relevant facts at the time that an allegedly false statement was made. (*See* Opp. at 12, 14); *see also In re Daou Systems*, 411 F.3d at 1022 (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 (9th Cir. 2002) ("'General allegations of defendants' 'hands-on' management style, their interaction with other officers and employees, their attendance at monthly meetings, and their receipt of unspecified weekly or monthly reports' are not sufficient to establish scienter."); *In re Downey*, 2009 U.S. Dist. LEXIS 83443, at *39 ("Plaintiff cannot base an inference of scienter on the Individual Defendant's access to unspecified documents and conversations."). Further, Plaintiff does not plead sufficient facts to place this case into the "exceedingly rare category of cases" where the "narrow [absurdity] exception" would apply. *South Ferry LP v. Killinger #2*, 542 F.3d 776, 785 n.3 (9th Cir. 2008); *Zucco*, 552 F.3d at 1001. Because neither *South Ferry* exception applies, Plaintiff's reliance on the core operations theory to support an inference of scienter lacks merit.

### D. Lack Of Insider Trading Weighs Heavily Against An Inference Of Scienter

While perhaps not dispositive, the lack of any suspicious or unusual insider trading by the Individual Defendants strongly suggests a lack of scienter, particularly where, as here, the Individual Defendants had a significant personal financial stake in the success of the Company. *See In re Remec Inc. Sec. Litig.*, No. 04-CV-1948, 2010 U.S. Dist. LEXIS 48415, at *146 (S.D. Cal. Apr. 21, 2010) ("[A] lack of motive to commit securities fraud is also exhibited by the absence of any allegation of insider trading."); *see also In re Downey,* 2009 U.S. Dist. LEXIS 25007 at *43 ("[A] strong inference of scienter is negated when there is an absence of stock sales or where such sales are minimal"); *N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*, No. 2:07-CV-5756, 2009 U.S. Dist. LEXIS 94241, at *48 (C.D. Cal. Sept. 25, 2009) ("[T]he fact that only one [defendant], is alleged to have engaged in insider trading . . . undercuts the allegations of scienter as to the other individual Defendants."). In addition, while Plaintiff is correct that "the absence of a motive allegation is not fatal," motive can be a

Gibson, Dunn &
Crutcher LLP

6

relevant factor, and "personal financial gain [or a lack thereof] may weigh heavily" when determining the strength of an inference of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 325 (2007).

### III.  DEFENDANTS' FORWARD-LOOKING STATEMENTS ARE NOT ACTIONABLE

#### A.  The Statements Identified By Defendants As Forward-Looking Are Entitled To Protection Under The PSLRA Safe-Harbor

In its Opposition, Plaintiff concedes that the challenged statements in paragraphs 13(a), 13(b), 22(b), 19(b)-(c), 29(b), 32(a), 35, 38(a)-(b), 39(a), 42(a)-(c), 43(b)-(e), 45(a)-(c), 48(c), 49(a), and 49(d) are forward-looking in nature. (*See* Opp. at 16-17 challenging only two of 25 paragraphs Defendants identified as forward-looking in their motion (*see* Mot. at 6)). Thus, Plaintiff disputes the forward-looking nature of only the following two statements:[8]

- "*[W]e believe* that GO Network customers represent *opportunities for future* Wi-Fi to WiMAX upgrades that utilize NextWave's WiMAX products and technologies." (SAC, ¶ 19(a)); and

- "Management *believes* our existing cash and cash equivalents, along with the release of $50.0 million of restricted cash based on our payment of consent fees in March and April 2008 in accordance with amended purchase agreement for the Notes . . . and *the cash forecasted* to be generated by operations, as well as a combination of . . . *potential sources* of cash *will be* sufficient to meet our estimated working capital and capital expenditures requirements through at least March 2009." (*Id*., ¶ 49(c)).

Plaintiff's attempt to recast these two forward-looking statements as "mixed present/future" statements lacks merit. The 2006 Form 10-K, from which the statement in paragraph 19(a) is drawn, specifically states that it contains forward-looking statements "which represent our expectations or beliefs concerning various future events, [and] may contain words such as 'may,' 'will,' 'expects,' 'anticipates,' 'intends,' 'plans,' 'believes,' 'estimates,' or other words of similar meaning in connection with any discussion of the timing and value of future results or future performance." RJN Ex. A (2006 10-K) at 1. The challenged quote includes the words "believes" and "future" as well as a discussion of potential future results. Not only does the statement in paragraph 49(c) contain similar forward-looking words, it is taken directly from the section of the SEC filing entitled "Looking Forward." *See*

---

[8] Defendants have not asserted that the statements in paragraphs 16, 25, 26, or 46 are forward-looking (*see* Mot. at 6), so Plaintiff's arguments about those statements are unnecessary diversions.

Case 3:08-cv-01697-LAB -WMC   Document 60   Filed 06/18/10   Page 12 of 17

*Slayton v. Am. Express Co.*, No. 08-5442, 2010 U.S. App. LEXIS 10072, at *23-24 (2d Cir. May 18, 2010) (adopting argument that "[t]he use of linguistic cues like 'we expect' or 'we believe,' when combined with an explanatory description of the company's intention to thereby designate a statement as forward-looking, generally should be sufficient to put the reader on notice that the company is making a forward-looking statement.").

Further, in paragraph 49(c) – unlike the statements in *In re Stone & Webster, Inc. Securities Litigation,* 414 F.3d 187, 212 (1st Cir. 2005), relied upon by Plaintiff – NextWave did not state that it had "*present* access to funds sufficient to meet anticipated future needs." (emphasis added.) To the contrary, NextWave's disclosure clearly stated that it anticipated *future* access to funds, such as "cash forecasted to be generated" and "a combination of potential sources" of cash that would be sufficient to satisfy anticipated future needs. (SAC, ¶ 49(c)). NextWave also stated in its filings that "[m]anagement **believes**" these potential sources of cash "**will be**" sufficient for such needs. Notably, NextWave did not use the present tense (i.e., did *not* state that such sources of cash "*are* sufficient").

Lastly, even if the statements in paragraphs 19(a) and 49(c) somehow could be considered to be mixed present/future statements, "a present tense statement can be considered forward-looking 'as long as the truth or falsity of the statement cannot be discerned until some point in time after the statement is made.'" *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1046 (N.D. Cal. 2007). In the statement quoted in paragraph 19(a), for example, whether or not GO Networks customers would make future upgrades to products using NextWave technology is not something that could be discerned at the time of making that statement. Thus, it is a forward-looking statement and entitled to safe-harbor protection.

**B.    Defendants' Forward-Looking Statements Were Accompanied By Meaningful Cautionary Language**

Plaintiff argues that even if properly classified as forward-looking, *none* of the 25 paragraphs of forward-looking statements quoted in the SAC fall within the safe harbor because NextWave's cautionary language is too "generalized" and fails to include "actual, known risks which already

Gibson, Dunn & Crutcher LLP

8

materialized."[9] (*See* Opp. at 17-19.)  Plaintiff's arguments lack merit as NextWave's cautionary statements were meaningful and specific as to each forward-looking statement.

### 1. NextWave's Cautionary Language Was Meaningful

NextWave's cautionary language is similar to and even more detailed than cautionary language that was deemed "extensive and specific" enough to fall within the safe harbor in *Avaya*, cited by Plaintiff.  *Compare Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 257-58 (3rd Cir. 2009) (upholding sufficiency of cautionary language warning investors that: assumptions in its disclosures might be inaccurate, there were unknown risks and uncertainties that could cause actual outcomes to differ materially from projections, and increased competition could negatively impact its business) *with* Mot. at 7:16-18 (no assurance of any additional financing available); 8:3-6 (inability to obtain cash could have material adverse effect on business); 8:12-15 (unexpected delays could affect competitive position).[10]

For example, NextWave's forward-looking statement quoted in SAC paragraph 49(c) refers to certain "potential sources of cash" that management believed would be necessary to meet its requirements through at least March 2009.  For each potential source of cash, NextWave included specific cautionary language about the risks related to the Company's ability to obtain it:

| Primary Sources of Potential Cash | Accompanying Cautionary Statement |
|---|---|
| Release of $25.0 million of restricted cash associated with Notes | "The release of these funds is subject to payment of a $3.5 million consent fee." |

---

[9] Regardless of whether NextWave's forward-looking statements were accompanied by sufficient cautionary language, Plaintiff's failure to allege actual knowledge of falsity brings the statements within the safe-harbor.  *See* 15 U.S.C. 78u-5(c)(1)(A)-(B).

[10] As set forth in the motion, courts in the Ninth Circuit have determined that cautionary language similar to NextWave's was sufficiently meaningful under the PSLRA safe harbor.  *See, e.g., Teamsters Local 175 v. Clorox Co.*, 353 F.3d 1125, 1133 (9th Cir. 2004) (holding that cautionary language warning there would be "*no assurance* that Clorox will be able to successfully integrate acquisitions into its operations" fell within the safe harbor provision of the PSLRA) (emphasis added); *In re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1098 (C.D. Cal. 2008) (finding sufficient cautionary language that indicated that actual financial results might differ from forward-looking statements and that risks such as delays in raising capital, market conditions, and interest rates could cause actual results to differ).

| Primary Sources of Potential Cash | Accompanying Cautionary Statement |
|---|---|
| Realization of value from against our auction rate securities | "[D]ue to recent weakness in the auction markets, we have been unable to liquidate our remaining auction rate securities. If we are unable to liquidate our auction rate securities in sufficient time to fund operations, we intend to pursue a collateralized borrowing against these auction rate securities." |
| Settlement of an escrow claim | "There can be no assurance that the escrow agent will rule in our favor and approve the release of the claim amount." |
| Working capital line of credit | "There can be no assurance that this line of credit will be available on acceptable terms, if at all." |
| Sale and related lease-back of an office building in Henderson, Nevada | "There can be no assurance that a buyer will be located or an acceptable offer on this property will be received." |

RJN Ex. G (Q1 2008 10-Q) at 35.  Following this specific cautionary language, NextWave went on to identify additional potential sources of cash that "may also be available to us" if the Company was "unable to successfully obtain cash through the sources described above."  *Id*.  The additional potential sources of cash were also accompanied by specific cautionary language.  *Id*.  Finally, the Company warned investors about the consequences if it was not able to obtain additional cash through any of these sources.  *Id*. at 36.  Accordingly, Plaintiff's gross mischaracterization of NextWave's cautionary language as too "generalized" is completely unfounded.[11]

### 2. Plaintiff Has Failed To Plead That Known Risks Existed That Were Not Disclosed By Defendants

In its Opposition, Plaintiff relies exclusively on CW3 and CW4 for the proposition that Defendants failed to disclose known materialized risks in the cautionary language accompanying NextWave's forward-looking statements.  (*See* Opp. at 18-19.)  As discussed *supra* in Section II(B)(2), CW3's allegation about NextWave's "burn rate" is vague, unreliable and, even if true, is not a fact that would render any statement false.  As to CW4, Plaintiff argues that "Defendants, while cautioning investors about the inability to realize benefits from the acquisitions, knew that IPWireless did not have

---

[11] Plaintiff's reliance on *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004), is unpersuasive.  As Judge Easterbrook noted in *Asher*, plaintiffs will always allege that cautionary language is insufficient because defendants failed to disclose known risks, otherwise they would not be asserting a claim for securities fraud in the first place.  If given credence, however, Plaintiff's argument would essentially render the safe-harbor meaningless.

critical design documents, and that the software code was a "spaghetti code," all of which made futile any attempt to modify NextWave's software to work with the IPWireless design station." (*Id*. citing SAC, ¶¶ 57(a)-(g)). In reality, however, CW4's allegations do not support such a claim.

For example, CW4 claims to have become aware of the alleged "spaghetti code" issue "after the acquisition" of IPWireless, which was not completed until May 2007. (SAC, ¶ 57(d)). CW4 never states how long after the acquisition he or she learned about this alleged issue (i.e., before any of the challenged statements regarding IPWireless) or when, if ever, it was communicated to the Individual Defendants. Thus, CW4's allegations do not support the argument that the Defendants knew, but did not disclose, that there were issues with the IPWireless technology. In addition, again citing to CW4, Plaintiff argues that: "Defendants also knew that the larger contract, touted as one of the reasons supporting the acquisition, had an 80% return rate for shipped products." (Opp. at 19 (citing SAC, ¶ 57(j)). Inasmuch as Plaintiff's CWs contradict each other, with one alleging an 80% return rate (CW4) and one alleging a 10% return rate (CW7), they do not provide reliable support for the allegation regarding the return rate, let alone that Defendants were aware of it. Thus, Plaintiff has failed to plead facts suggesting that there were any actual known risks that would render Defendants' cautionary language insufficient.

### 3. Cautionary Language May Be Evaluated At The Pleading Stage

Finally, Plaintiff incorrectly argues that "adequacy of cautionary language . . . cannot be determined at the pleading stage." (Opp. at 19). To the contrary, "[w]hether a statement qualifies for safe harbor protection is a proper inquiry on a motion to dismiss." *In re Wet Seal*, 518 F. Supp. 2d at 1169; *see also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994) ("The bespeaks caution doctrine provides a mechanism by which a court can rule as a matter of law (typically in a motion to dismiss for failure to state a cause of action or a motion for summary judgment) that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." (internal quotations omitted)). Here, determination at the pleading stage is proper because there is "sufficient 'cautionary language or risk disclosure [such] that reasonable minds could not disagree that the challenged statements were not misleading.'" *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005).

Gibson, Dunn & Crutcher LLP

11

### IV. PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION

While Plaintiff acknowledges that it must provide "'some indication' that the drop in the company's stock price was 'causally related' to the company's fraud" the SAC fails to do so. (Opp. at 20) citing *In re Daou*, 411 F.3d at 1026.  Plaintiff cannot plead loss causation by merely alleging that "the drop in NextWave's stock price removed the inflation from NextWave's stock." (Opp. at 21); *see Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (holding that the securities laws are not designed "to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations *actually cause*") (emphasis added).

In addition, Plaintiff fails to sufficiently identify a corrective disclosure.  A corrective disclosure is an announcement that "reveals the fraud to the public." *In re Williams Sec. Litig.*, 558 F.3d 1130, 1137 (10th Cir. 2009).  While the disclosure need not precisely mirror the alleged misrepresentation "fact-for-fact" (*see* Opp. at 20), "it must at least relate back to the misrepresentation and not to some other negative information about the company." *Id.* at 1140.  According to Plaintiff, the corrective disclosure was the August 7, 2008 press release announcing second quarter 2008 results. However, Plaintiff fails to identify any new facts in the press release that correct any prior statements or otherwise reveal that any prior statements were false or misleading.  Instead, the disclosure simply updates the Company's present and future plans in response to current and anticipated marketplace conditions.  Therefore, the August 7, 2008 announcement does not constitute a corrective disclosure.

### V. CONCLUSION

Plaintiff's SAC fails to meet the heightened pleading standards for securities fraud. Accordingly, Defendants respectfully request that the Court dismiss the SAC with prejudice.

Dated:  June 18, 2010                      GIBSON, DUNN & CRUTCHER LLP

By:  s/Meryl L. Young
Meryl L. Young
Attorneys for Defendants NEXTWAVE WIRELESS INC., ALLEN SALMASI and GEORGE C. ALEX

100888781_1.DOC

# CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2010, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

- **Jessica A. Boschee**
  JBoschee@gibsondunn.com,anathan@gibsondunn.com,TStephens@gibsondunn.com
- **Bridget Fogarty Gramme**
  Bridget@hulettharper.com,office@hulettharper.com
- **Deborah R. Gross**
  debbie@bernardmgross.com
- **Kirk B Hulett**
  kbh@hulettharper.com,office@hulettharper.com
- **Jordan L Lurie**
  jlurie@weisslurie.com,infoca@weisslurie.com
- **James Marley**
  jlurie@weisslurie.com
- **Leigh A Parker**
  lparker@weisslurie.com,info@weisslurie.com
- **Jared Ray**
  jlurie@weisslurie.com
- **Wayne W Smith**
  wsmith@gibsondunn.com,dfkennedy@gibsondunn.com
- **Meryl L Young**
  myoung@gibsondunn.com,pmclean@gibsondunn.com

Executed on June 18, 2010.

       s/Meryl L. Young
       Meryl L. Young

Gibson, Dunn & Crutcher LLP